MAUD E. WRIGHT *vs.* BOSTON AND NORTHERN STREET
RAILWAY COMPANY.

GILBERT E. WRIGHT *vs.* SAME.

Essex. November 3, 4, 1909. — November 23, 1909.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* Street railway, In use of highway.

At the trial of an action against a street railway company by a passenger upon
one of the defendant's cars, who was injured by reason of the car being struck
by a vehicle which it was passing, there was evidence tending to show that, at
the place where the accident happened, there were double tracks and the car was
proceeding on the right hand track, that the ground between the rails of the tracks
was covered with ice, but that the rails were clear, that an icy ridge from three to
five inches high existed in the middle of the space between the rails of each
track, from which there was a slope to the rails; that in front of the car there
was a two horse wagon loaded with hay, to which was attached a wagon carry-
ing an adjustable tower such as is used to repair electric wires, the tower being
lowered and extending out behind the wagon, that neither the hay wagon nor
the tower wagon belonged to or was in the control of the defendant; that, as
the car approached, the hay wagon turned out to the left, taking the tower
wagon with it, whereupon the car proceeded forward with slackened speed
and was part way past the tower wagon, when the car "gave a sudden start
forward" and at the same time the rear of the tower wagon swerved around
toward the car and the projecting tower crashed into the windows of the car,
breaking glass, tearing out partitions between the windows and injuring the
plaintiff. *Held,* that the question, whether the defendant had discharged its
duty as a common carrier, was for the jury.

TWO ACTIONS OF TORT, the first by a woman for personal
injuries alleged to have been received, while she was a passen-
ger on an electric street car of the defendant, by reason of a
wagon carrying an extension tower swerving around and strik-
ing the car as it was passing and breaking windows immedi-
ately behind where the plaintiff sat in the car, and the second
by the husband of the plaintiff in the first for loss sustained
by reason of her injuries. Writs dated February 17, 1905.

The cases were tried together before *Bell,* J. There was evi-
dence tending to show the following facts: As the car in which
the plaintiff was a passenger approached a two horse wagon
loaded with hay, to the rear of which was attached the tower
wagon described in the opinion, the team turned to the left out
of the tracks. There were at the place of the accident double

street car tracks. The space between the rails of the tracks was icy, with the rails clear. Between the rails of each track there was a ridge of ice and snow from three to five inches high, from which to the rails the icy surface slanted. The car in which the plaintiff was proceeded slowly up to and part way by the tower wagon, when the rear of the wagon swerved toward the car, the car was started suddenly forward, and the projecting tower struck it, breaking several windows and tearing out the partitions between them. Neither the motorman nor the conductor in charge of the car testified. Other facts are stated in the opinion.

At the close of the evidence, the defendant asked the presiding judge to rule, in substance, that there was no evidence of negligence of the motorman or of any employee of the defendant, and that a verdict be ordered for the defendant. The judge refused to do so, the jury found for the plaintiffs; and the defendant alleged exceptions.

*S. Parsons*, (*H. A. Bowen* with him,) for the defendant.

*W. H. Sullivan*, for the plaintiffs.

BRALEY, J. The plaintiff, Maud E. Wright, having been injured when the car in which she was riding came in contact with the tower wagon, and her due care having been conceded, the only question is whether there was any evidence for the jury of the defendant's negligence.

It could have been found upon the evidence introduced by her, that as the car overtook the travelling outfit, made up of a pair of horses harnessed to a wagon loaded with hay, to the rear end of which a wagon with an extension tower was attached with the tower so lowered that it projected beyond the rear but not over the sides of the tower wagon, the driver turned to the left in order to pass from off the track. But, while turning on the ice or hard snow, with which the street was coated, the tower wagon swerved, causing the projecting end of the tower to strike the moving car.

It would be difficult to say as matter of law, if nothing further appeared, that the motorman in charge of the car, but who was not called as a witness, took every reasonable precaution to avoid the accident. If the team with its connections had entirely left the track, the situation was plain. The jury could

have found that the motorman by the exercise of due diligence should have seen that the driver was still moving somewhat sharply to the left, and realized that, from the slippery condition of the surface with the length of the tandem, there was reason to apprehend that, as the tower wagon came around, it might not swing entirely clear of the track.  If with this knowledge or means of knowledge the motorman, even when he found the track itself was clear, did not stop the car, but went forward, the jury could say that he failed to appreciate as he should have done either the tendency of the tower wagon to turn away less rapidly than the wagon in the lead, or that the icy condition of the street might cause the wheels to slide in on the ridge of ice and snow, which from the evidence is shown to have sloped toward the outer rail of the track.

But from the testimony of the plaintiff it further appeared, that the speed had been slackened and that the car, having gone partially and safely by, " gave a sudden start forward."   The inference would not have been unwarranted that, although at first running slowly, the motorman, when he mistakenly deemed the danger to have been passed, incautiously applied more power, which immediately caused the accident.  .

We have said in cases of collision between travellers when concurrently using the public ways, that the question of the due care, or negligence of the parties, ordinarily is for the determination of the jury.  *Hennessey* v. *Taylor*, 189 Mass. 583, 584, and cases cited.  It is true that a street car must pass on the track provided for it, but this rigidity of movement, while an important element which may affect their reciprocal duties, does not abrogate them.   *White* v. *Worcester Consolidated Street Railway*, 167 Mass. 43.   *O'Brien* v. *Blue Hill Street Railway*, 186 Mass. 446.

It was, therefore, for the jury to decide whether upon all the evidence the defendant as a common carrier had discharged its duty.  *White* v. *Worcester Consolidated Street Railway*, 167 Mass. 43.  *Williamson* v. *Old Colony Street Railway*, 191 Mass. 144.  *Stubbs* v. *Boston & Northern Street Railway*, 193 Mass. 513.  *Chaput* v. *Haverhill, Georgetown & Danvers Street Railway*, 194 Mass. 218.  *Lockwood* v. *Boston Elevated Railway*, 200 Mass. 537.

*Exceptions overruled.*