MARTIN O'BRIEN *vs.* LEXINGTON AND BOSTON STREET RAILWAY COMPANY.

Middlesex.    January 10, 11, 1910. — February 24, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Negligence,* In use of highway.

If a servant of a farmer, who is driving a pair of large and heavy horses attached to a wagon containing a heavy load of swill, turns diagonally across the single track of a street railway for the purpose of entering a driveway leading from the street to the farm of his employer, and as he turns looks back and sees a coal car on the street railway near the top of a hill about four or five hundred feet distant, which is approaching from behind on a down grade with an unobstructed view, and, instead of attempting to turn back, he continues to cross the track, still looking at the approaching car, and nods his head to the motorman in a way that can be interpreted to mean that, he, having miscalculated the distance or having failed to appreciate the rate of speed of the car, hopes that the motorman can stop or retard the car so as to avert a collision or lessen its force, and thereupon the car, moving at an excessive rate of speed which is not diminished, strikes the team, killing one of the horses and injuring the

wagon, in an action by the farmer against the corporation operating the car for the loss of and injury to his property, the question whether the plaintiff's servant was in the exercise of due care is for the jury.

TORT by a farmer for the loss of a horse and injuries to another horse and a wagon of the plaintiff from being run into from behind by a coal car of the defendant on Waltham Street in Lexington on August 31, 1904, when a servant of the plaintiff was driving a pair of large and heavy horses attached to the wagon, which contained a heavy load of swill, across the single track of a railway of the defendant in that street, in attempting to enter a driveway leading to the plaintiff's farm, the collision being alleged to have been caused by the negligence of the motorman of the defendant in operating the car at a high rate of speed which he failed to diminish when he saw the plaintiff's servant driving across the track ahead of him. Writ dated October 17, 1904.

In the Superior Court the case was tried before *Stevens*, J. At the close of the evidence the defendant asked the judge to rule that the plaintiff was not entitled to recover. The judge refused to make this ruling, and submitted the case to the jury, who, as shown by the record of the Superior Court, returned a verdict for the plaintiff in the sum of $512.50. The defendant alleged exceptions.

*J. N. Clark*, for the defendant.

*J. T. Connelly*, for the plaintiff.

BRALEY, J. If, in the absence of any such statement in the bill of exceptions, we assume that the plaintiff obtained a verdict, the question for decision is, whether upon the evidence introduced by the plaintiff the trial judge could have ruled as requested by the defendant, that as matter of law the action could not be maintained. The plaintiff's servant, who was driving a heavily loaded team, and the defendant's motorman in charge of its coal car were lawfully using the street in common, and it was the motorman's duty to pay reasonable attention to the presence of travellers and to avoid collisions. *O'Brien* v. *Blue Hill Street Railway*, 186 Mass. 446. *Stubbs* v. *Boston & Northern Street Railway*, 193 Mass. 513. *Fallon* v. *Boston Elevated Railway*, 201 Mass. 179, 182. *Wright* v. *Boston & Northern Street Railway*, 203 Mass. 569. The team had reached a point in the

line of travel, where it began to turn diagonally to pass over the track into the driveway leading from the street to the plaintiff's farm. In their description of what followed the witnesses are substantially in accord. The jury from the evidence would have been warranted in finding that the driver looked as he turned and saw the car, which was then near the top of the hill about four or five hundred feet distant, moving on a down grade, with the view unobstructed. It was evident he must choose one of two alternatives, either to turn back, if that were possible, and wait for the car to pass, or to go forward. While confronted by this situation he well might assume that the motorman, who could be found to have seen the movements of the team, would slacken speed, instead of apparently keeping on without making the slightest effort to check it. The exceptions further recite, that as the driver saw the car coming, he not only continued to look, but nodded his head to the motorman. This conduct could be interpreted by the jury as meaning, that having miscalculated the distance, or failing to realize the speed of approach, upon perceiving his imminent peril he hoped the motorman by an application of the brakes could avert the collision or lessen its force. If in connection with the presumption that the motorman would not act carelessly, the driver also assumed that the team safely could cross, it was for the jury to determine whether in making an error of judgment, as the event proved, he acted differently from the average man called upon to face similar conditions, and to decide at once what course should be pursued. *Kerrigan* v. *West End Street Railway*, 158 Mass. 305. *Hennessey* v. *Taylor*, 189 Mass. 583, 585. *Jeddrey* v. *Boston & Northern Street Railway*, 198 Mass. 232, 235. Travellers on foot or by carriage are required only to exercise ordinary care when using the public ways to avoid defects therein or collisions with passing vehicles. *Hennessey* v. *Taylor*, 189 Mass. 583. *Wakefield* v. *Boston Coal Co.* 197 Mass. 527, 530. And it often has been pointed out, that street cars, while they must run on tracks provided for them, have no exclusive right of way which puts upon persons travelling otherwise the burden of constantly looking and listening for their approach so that, if they fail to do so and are injured, their conduct invariably should be held to preclude recovery. *Wright* v. *Boston & North-*

*ern Street Railway,* 203 Mass. 569. *Eldredge* v. *Boston Elevated Railway,* 203 Mass. 582. The defendant urgently calls our attention to the cases of *Willis* v. *Boston & Northern Street Railway,* 202 Mass. 463, *Beirne* v. *Lawrence & Methuen Street Railway,* 197 Mass. 173, *Fitzgerald* v. *Boston Elevated Railway,* 194 Mass. 242, *Tognazzi* v. *Milford & Uxbridge Street Railway,* 201 Mass. 7, and *Smith* v. *Boston Elevated Railway,* 202 Mass. 489, as supporting its contention, but they do not disclose a similar state of facts. A majority of the court were of opinion in *Tognazzi* v. *Milford & Uxbridge Street Railway* that the failure of the plaintiff, who was driving a covered wagon with openings in the sides and had passed from a cross street over the track after looking without seeing a car, again to look as he turned to cross the track a second time to go into his own yard, when by so doing he could have avoided the car, was such negligence as to bar the action. In *Smith* v. *Boston Elevated Railway,* the plaintiff, a pedestrian, after having seen the car, left the crosswalk, and without again looking, proceeded along the side of the track for some distance with his back to the advancing car, by which he was struck. If in the other cases it was held, that, although the plaintiff testified he looked but did not see a car which the court said he should have seen, he was not entitled to go to the jury on the question of his due care, the undisputed evidence in the present case shows, that the driver " looked towards the car and heard the car . . . when he started to turn in." If by reason of the distance he failed to appreciate the danger, and ordinarily but for its excessive rate of speed he could have gone over the track in safety, or whether he should have taken further precautions, were questions of fact upon all the evidence. Our attention has not been called to any case, and we know of none, where it has been said, that evidence of this nature can be disregarded, or the credibility of witnesses, and the probative effect of evidence from which more than one conclusion of fact may be properly drawn, can be taken from the jury and treated as only presenting a question of law. The defendant while not conceding, does not question, that there was evidence of its negligence, and the due care of the plaintiff's servant having been properly submitted to the jury, the exceptions must be overruled.

*So ordered.*